UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LAURIE GROOMAN,

        Plaintiff,

    v.

CLACKAMAS COUNTY, a political
subdivision of the State of Oregon; JOHN
CHRISTENSEN, in his individual and official
capacity; and JOSH HATTAN, in his
individual and official capacity,

        Defendants.

Case No. 3:13-cv-00519-HA

OPINION AND ORDER

---

HAGGERTY, District Judge:

Plaintiff Laurie Grooman brought this lawsuit against defendants Clackamas County,

John Christensen, and Josh Hattan. Plaintiff's claims arise from plaintiff's alleged unlawful

detention, arrest, and exclusion from Happy Valley Park by law enforcement on July 4, 2012. On

May 29, 2014, defendants filed a Motion for Summary Judgment [37], arguing that plaintiff's

claims fail as a matter of law. On October 2, 2014, this court heard oral argument on defendants'

Motion. For the following reasons, defendants' Motion for Summary Judgment is granted in part

and denied in part.

1 - OPINION AND ORDER

**FACTUAL BACKGROUND**

The claims in this case arise from the events of an Independence Day celebration in

Happy Valley Park ("the park") in the City of Happy Valley, Oregon on July 4, 2012. Plaintiff

was collecting signatures for a petition in the park before law enforcement excluded her from the

park and arrested her for trespassing when she refused to leave. Law enforcement based

plaintiff's exclusion on reports that plaintiff was unreasonably loud, disruptive, and harassing

other patrons of the event. Plaintiff's and defendants' descriptions of the events that led to

plaintiff's arrest differ significantly.

According to defendants, plaintiff's disruptive contact was first observed by Mike De La

Rosa, owner of Metro Enforcement Special Services, which was hired to provide private security

for the Fourth of July celebration. According to De La Rosa, he witnessed plaintiff harassing

citizens in the park by yelling at them, intimidating them, causing a public disturbance, making

an unreasonable amount of noise, impeding their movement as they attempted to avoid her, and

making unwanted and offensive physical contact with them. De La Rosa Decl. ¶ 7. Specifically,

De La Rosa observed plaintiff stand in the center of the sidewalk so that two families were forced

to walk around her, and she grabbed the arm of one gentleman as he walked past. De La Rosa

Dep. 56:2-23. De La Rosa was unable to hear what plaintiff said to the families as they passed

her. De La Rosa Dep. 65:18-20. De La Rosa used his radio to alert law enforcement of what he

had seen and provided a physical description of plaintiff. De La Rosa Decl. ¶ 13.

Michelle Amend, a Code Enforcement Officer for the City of Happy Valley, testified that

she received several complaints that a woman, later identified as plaintiff, was harassing patrons

by using profanity, "getting in their faces," and acting aggressively. Amend Decl. ¶ 2. Amend

used her radio to relay this information to the Clackamas County deputies in the park. Amend Decl. ¶ 3.

Markley Drake is the Council President for the City of Happy Valley. During the afternoon of the event, Drake was approached by Roseanne Cupp, a woman helping plaintiff collect signatures. Cupp began telling Drake about an interaction she had just had with Reserve Deputy Christine Burke, in which Burke threatened to arrest Cupp if she continued to collect signatures. As Cupp spoke with Drake, plaintiff aggressively approached Drake to discuss their right to petition in the park. Drake Dep. 20: 1-12. During the conversation, plaintiff tapped Drake several times with her clipboard and used profanities. Drake Dep. 20:13-15; 23:10-13. Without knowing the facts underlying plaintiff's complaints, Drake walked to the command post to inform the staff that plaintiff wanted to speak with the police. Drake Dep. 20:23-25. The staff at the command post used the radio to relay the information to law enforcement. As Drake walked to the command post, he observed plaintiff confront a family. As they waived her away, she aggressively got in front of them again and again. Drake Dep. 21:7-17.

Sergeant John Christensen, Deputy Josh Hattan, and Reserve Deputy Christine Burke are employed by the Clackamas County Sheriff's Office, and they were in the park providing law enforcement services for the Independence Day event. Sergeant Christensen and Deputy Hattan each heard at least one radio broadcast concerning a woman that was making unreasonable noise, causing a disturbance, and harassing other patrons. Christensen Decl. ¶ 3; Hattan Decl. ¶ 3. The radio broadcasts included a physical description of the woman causing the disturbance. Deputy Hattan informed Reserve Deputy Burke of the reports and provided Burke with a description of plaintiff. Burke Dep. 25:15-20.

3 - OPINION AND ORDER

Burke was the first law enforcement officer to locate plaintiff, but, as a reserve deputy, Burke chose not to approach plaintiff without another officer present. Burke Dep. 27:20-28:3. As Burke observed plaintiff, she described plaintiff as "charging me like an angry rhino, walking fast, swinging her arms, screaming, 'Arrest me, arrest me.'" Burke Dep. 24:8-10. Burke immediately called for backup on her radio. Burke Dep. 28:21-22. Burke testified in her deposition that after initially stopping, plaintiff charged her a second time. Burke Dep. 29:11-13. Burke told her to stop and radioed for assistance a second time. Burke Dep. 30:1-24.

Sergeant Christensen and Deputy Hattan responded to the scene. Hattan began speaking to plaintiff, who was yelling and causing a disturbance that attracted a crowd of approximately thirty people. Hattan Decl. 38:12-22. Steve Campbell, the Director of Community Services for the City, tried to convince plaintiff to calm down or he would be forced to exclude her from the park. Campbell Dep. 17:3-6. Plaintiff continued to yell profanities. Campbell Dep. 18:25-19:4.

Christensen and Hattan then ordered plaintiff to leave the park. When plaintiff refused to leave, she was arrested for Criminal Trespass II, pursuant to Oregon Revised Statute (ORS) 164.245. Plaintiff was subjected to a search incident to arrest, including a pat-down and pocket search. Christensen Decl. ¶ 21. Plaintiff was jailed for more than two hours.

Plaintiff's summary of the facts differs significantly from those stated above. Plaintiff contends that she was not causing any disturbance whatsoever. According to plaintiff, she was efficiently collecting signatures before learning from Roseanne Cupp that Reserve Deputy Burke threatened to arrest Cupp if she continued to collect signatures. Grooman Dep. 39:16-19. Cupp and Grooman approached Councilman Drake and had a two-minute conversation about the manner in which Reserve Deputy Burke had treated Cupp. Plaintiff agrees that Drake responded

to the conversation by walking to the command post to relay that plaintiff wished to speak with law enforcement. Plaintiff notes that Drake did not consider his report a complaint against plaintiff. Drake Dep. 28:25-29:3.

According to plaintiff, it was Reserve Deputy Burke that approached her much later in the afternoon. Grooman Dep. 90: 8-12. Plaintiff responded to Burke by saying something benign and then turning away. Grooman Dep. 90:8-25. Then, Burke said, "If you do that again, I'm going to Tase you." Grooman Dep. 90:23-24. Burke called for backup. When the other officers arrived, plaintiff was tapped on the shoulder by a male officer and advised that she was being detained for criminal trespassing. Grooman Dep. 99:8-13. When plaintiff declared that she had the right to free speech, the officer responded, "You have the right to shush up." Grooman Dep. 100:10-14. Plaintiff attempted to call her attorney, but she was prevented from doing so. Grooman Dep. 98:2-3. After plaintiff was placed in handcuffs, one of the officers threatened to "face plant" her because they dropped her pen and she requested that they pick it up. Grooman Dep. 91:15-25. Plaintiff denies that she was being loud, using profanity, or harassing people. Grooman Dep. 100:24-25; 101:1-2; 107:12-108:3.

After she was arrested, plaintiff was provided a written exclusion from the park. The City of Happy Valley has an ordinance entitled Exclusionary Policy, which sets out criteria for exclusion from Happy Valley parks. Happy Valley Municipal Code § 9.04.010. The form that plaintiff received excluded her from Happy Valley Park from July 4, 2012 through July 5, 2013.[1] Christensen Decl. Ex. 103. The form explains the appeal process to challenge the validity of the

---

[1] The Notice of Exclusion actually reads that plaintiff was excluded from Happy Valley Park from July 14, 2012 through July 5, 2013; however, that date was a typographical error. Duffy Dep. 14:6-16.

exclusion. Christensen Decl. Ex 103. Plaintiff never appealed the exclusion. Grooman Dep. 130:20-25.

Based on these facts, on February 27, 2014, plaintiff filed a First Amended Complaint against Clackamas County, John Christensen, and Josh Hattan.[2] Count I of the First Amended Complaint alleges that defendants violated plaintiff's rights to freedom of speech and expression guaranteed by the First Amendment. Count II alleges that defendants denied plaintiff's right to equal protection of the laws in violation of the Fourteenth Amendment. Additionally, plaintiff alleges in Count IV and Count V that defendants violated her substantive due process rights and procedural due process rights, which are guaranteed by the Fourteenth Amendment.[3] For these violations, plaintiff requests economic and non-economic damages, as well as attorney fees. On May 29, 2014, defendants filed a Motion for Summary Judgement [37], arguing that plaintiff's claims must fail as a matter of law.

**STANDARDS**

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any

---

[2]Plaintiff's original complaint also named the City of Happy Valley; Jason Tuck, the City Manager for the City of Happy Valley; Christine Burke, Reserve Deputy Sheriff for Clackamas County; and Dale Duffy, Deputy Sheriff for Clackamas County. Each of these defendants have been dismissed through the parties' Stipulated Notices of Dismissal [20, 24].

[3] Plaintiff voluntarily dismissed [56] Count III of her Amended Complaint.

6 - OPINION AND ORDER

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City & County of S.F.*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

## ANALYSIS

In support of their Motion for Summary Judgment, defendants set forth several arguments concerning the merit of plaintiff's claims: (A) plaintiff failed to state a claim upon which relief can be granted as to defendant Clackamas County; (B) individual defendants are protected by qualified immunity; (C) plaintiff's First Amendment claim fails as a matter of law; (D) plaintiff's

Fourteenth Amendment equal protection claim fails as a matter of law; (E) plaintiff's substantive

due process claim fails as a matter of law; and (F) plaintiff's procedural due process claim fails as

a matter of law.

A.    **Plaintiff's Claims Against Clackamas County**

Defendants argue that all of plaintiff's claims fail to state a claim upon which relief can be

granted as to Clackamas County.  Specifically, defendants argue that plaintiff failed to state a

claim because she did not identify a specific policy, practice, or custom attributable to the County

that violated her rights.

Both parties agree that plaintiff's claims are brought pursuant to 42 U.S.C. § 1983.  The

parties also agree that while local governments may be sued under § 1983, they cannot be held

vicariously liable for their employees' constitutional violations.  *Monell v. Dep't of Soc. Servs.*,

436 U.S. 658, 690 (1978).  Rather, § 1983 subjects a municipality to liability only "if it is alleged

to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by that body's officers."  *City of St. Louis v. Praprotnik*, 485

U.S. 112, 121 (1988) (quoting *Monell*, 436 U.S. at 690).  Therefore, in order to state a valid §

1983 claim against a municipality, the complaint must allege the existence of a practice, policy,

or custom that caused the plaintiff's alleged injury.  *Wagner v. Santa Clara Sheriff's Office*, 116

F.3d 488 (9th Cir. 1997).

In the present case, defendants assert that plaintiff named Clackamas County in the First

Amended Complaint, but failed to offer any allegation of an unlawful policy, practice, or custom

that is attributable to the County.  This court agrees.  The First Amended Complaint does

complain that defendants violated her constitutional rights by leaving the decision to exclude an

individual from the park to the discretion of law enforcement. First Am. Compl. ¶ 47. Similarly, plaintiff complains that defendants failed to provide clear standards as to what conduct is unlawful; failed to provide plaintiff pre-deprivation notice of what type of conduct is unlawful; failed to provide plaintiff with a pre-deprivation hearing; and failed to provide plaintiff with an impartial decision-maker. First Am. Compl. ¶ 52. However, the park is owned by the City of Happy Valley and it is the City's policies and ordinances, not the policies of Clackamas County, that govern what conduct is acceptable within the park. Therefore, plaintiff's claims are more appropriately placed against the City of Happy Valley, which is no longer a party to this law suit.

Defendants assert that plaintiff was excluded from the park pursuant to a City ordinance, and plaintiff failed to challenge that contention. Plaintiff's response merely explains that the officers of Clackamas County were acting within the course and scope of their employment during the arrest, and Oregon law requires that Clackamas County indemnify and defend its employees. Pl.'s Resp. at 9. While plaintiff is correct in that a municipality is required to defend and indemnify its employees, this in no way cures plaintiff's failure to identify a Clackamas County practice, policy, or custom that caused her injury. Consequently, it is not a means to impose liability directly on a municipality.

In plaintiff's Supplemental Briefing [57], she argues that, in excluding plaintiff, Sergeant Christensen, Deputy Hattan, and Reserve Deputy Duffey were acting in accordance with the training provided by and policies implemented by Clackamas County. Essentially, plaintiff attempts to plead a *Monell* claim for the first time in her Supplemental Briefing. However, it is well settled that "summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prod., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

9 - OPINION AND ORDER

Plaintiff cannot raise a new theory of liability for the first time in opposition to summary judgment. Therefore, plaintiff has failed to satisfy the requirements of *Monell* and its progeny, and summary judgment is granted in defendants' favor as to all claims against Clackamas County.

### B.    Qualified Immunity of Individual Defendants

Defendants argue that plaintiff's claims against individual defendants, John Christensen and Josh Hattan, should be dismissed because the officers are entitled qualified immunity from liability. "Qualified immunity protects government officials from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine provides an immunity from suit rather than a defense to liability, *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), and ensures that "officers are on notice [that] their conduct is unlawful" before being subjected to suit. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). In this way, the doctrine strikes a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury . . . show [that] the [defendants'] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236. Second, the court must determine whether the right was

clearly established at the time of the alleged violation. *Id.* Even if the violated right was clearly established at the time of the violation, the defendant is entitled to qualified immunity if his mistake as to what the law requires is reasonable. *Id.* at 205. The court may address these two prongs in either order. *Pearson*, 555 U.S. at 236. Whether the defendant violated a constitutional right and whether the right was clearly established at the time of the violation are pure legal questions for the court. *Serrano v. Francis*, 345 F.3d 1071, 1080 (9th Cir. 2003). However, if a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial. *Id. at* 1077.

The court will analyze the qualified immunity of the individual defendants for each of the constitutional violations that plaintiff alleges.

        1.      Fourteenth Amendment Equal Protection Claim

Plaintiff's First Amended Complaint alleges that defendants violated the Equal Protection Clause of the Fourteenth Amendment by treating plaintiff differently based on the content of her political message. First Am. Compl. ¶ 8. As an initial matter, plaintiff has entirely failed to respond to defendants' Motion as to her equal protection claim. In so doing, plaintiff has abandoned that claim. *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (citation omitted).

Moreover, the facts alleged do not show that the officers violated plaintiff's right to equal protection under the first prong of the qualified immunity test. The Equal Protection Clause guarantees, "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In other words, "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth

Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Here, plaintiff has not alleged that she is a member of any protected class. As such, plaintiff failed to properly plead a claim under the Equal Protection Clause.

It may be argued, though plaintiff did not, that her equal protection claim is a "class of one claim," which alleges that the officers intentionally treated her differently from other similarly situated people in the park. The Supreme Court has recognized that "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

To succeed on a "class of one" claim, plaintiff must demonstrate that the officers: (1) intentionally (2) treated plaintiff differently than other similarly situated people in the park, (3) without a rational basis. *Gerhart v. Lake County, Montana*, 637 F.3d 1013, 1022 (9th Cir. 2011) (citations omitted). While plaintiff must show that the officers' decision was intentional, she need not show that they "were motivated by subjective ill will." *Id.*

Plaintiff's claim fails because she produced no evidence to suggest that she was treated any differently than other similarly situated patrons in the park. Defendants, on the other hand, produced evidence demonstrating that two other individuals were excluded from the park on the same day for causing a disturbance. Christensen Decl. ¶ 25, Ex. 104. While plaintiff claims that she was treated differently based on the content of her message, the evidence suggests that the

arresting officers were not even aware of the content of plaintiff's message.  Christensen Decl. ¶ 20; Hattan Decl. ¶ 18.  As such, plaintiff failed to demonstrate that the officers intentionally treated her differently than similarly situated individuals in the park, and consequently failed to allege a violation of her right to equal protection.  Therefore, the alleged facts do not show that the officers violated plaintiff's equal protection rights and plaintiff has not satisfied the first prong of the qualified immunity test.  Summary judgment is granted in favor of the officers on Count II.

2.    Procedural Due Process Claim

Plaintiff also alleges that defendants' actions violated her procedural due process rights.  Specifically, plaintiff complains that defendants excluded her from the park without clear standards that establish what type of conduct is unlawful; pre-deprivation notice of what type of conduct is unlawful; a pre-deprivation hearing; meaningful post-deprivation hearing; and an impartial decision maker.

Under the first prong of the qualified immunity test, the facts alleged do not show that the officer's violated plaintiff's procedural due process rights.  Defendants argue that, because the park is owned and managed by the City of Happy Valley, each of these allegations is properly directed at the City of Happy Valley, not the remaining defendants.  In response, plaintiff fails to address whether the individual officers can be held liable for her procedural due process claims.  Instead, plaintiff's response almost exclusively consists of one extensive block quote, which outlines the standards for a procedural due process claim.  Pl.'s Response [50] at 21-23 (quoting *Yeakle v. City of Portland*, 322 F. Supp. 2d 1119, 1129-1131 (D. Or. 2004)).  As exemplified in *Yeakle*, which plaintiff relies on heavily throughout her brief, a procedural due process claim that alleges the deprivation of a fundamental right without due process is properly brought against the

13 - OPINION AND ORDER

entity that caused the deprivation. In *Yeakle*, the plaintiffs were excluded from a courthouse square that was owned by the City of Portland pursuant to an ordinance that was enacted by the City of Portland. 322 F. Supp. 2d at 1122. Accordingly, this court found that it was the City of Portland that violated the plaintiffs' constitutional rights. *Id.* at 1132.

Similarly, in *Humphries v. County of Los Angeles*, parents who had been arrested for child abuse but later found innocent bought a § 1983 claim against the state, county, and individual officers of the county sheriff's department, alleging that their continued listing in California's Child Abuse Central Index (CACI) violated their rights to procedural due process because there was no available process to challenge that listing. 554 F.3d 1170 (9th Cir. 2009) *rev'd on other grounds by Los Angeles County v. Humphries*, 562 U.S. 29 (2010). Under a discussion of qualified immunity for the individual officers, the Ninth Circuit explained that "liability under § 1983 arises only upon a showing of personal participation by the defendant." *Id.* at 1202 (citation and quotation omitted). The Ninth Circuit held that, because the plaintiff presented no evidence to suggest that the arresting officers were in any way involved in the decision to list the plaintiffs in the CACI, they cannot be subject to liability. *Id.*

In this case, the park is owned and managed by the City of Happy Valley. Plaintiff was excluded from the park pursuant to a Happy Valley Municipal Code § 9.04.010. Plaintiff has failed to present any evidence to suggest that the arresting officers had any involvement in drafting the procedural protections of that municipal code or any other regulation or ordinance under which the officers claim to have excluded plaintiff. Much like in *Humphries*, it was not the arresting officers who had the authority to provide the procedures of which plaintiff complains she was deprived. Therefore, any claim that plaintiff's exclusion was issued without

14 - OPINION AND ORDER

adequate notice or process should be directed at the City of Happy Valley, not the arresting officers. As such, the alleged facts do not show that the arresting officers violated plaintiff's rights to procedural due process, and summary judgment is granted in defendants' favor on Count V.

### 3.    Substantive Due Process Claim

Plaintiff alleges that defendants' actions constitute a violation of plaintiff's substantive due process rights, because there is not an ordinance, law, or policy that supports defendants' actions, and plaintiff was excluded at the discretion of individual officers. First Am. Compl. ¶ 47. Under the first prong of the qualified immunity test, the court is tasked with determining whether the facts alleged show that the officers violated plaintiff's substantive due process rights. Based on the following analysis, the court finds that they do not.

Defendants argue that this claim is properly bought under specific amendments to the U.S. Constitution as opposed to the more general concept of substantive due process. Ninth Circuit precedent supports defendants' argument in part. "The specific guarantees of the first Eight Amendments stake out reliable limits to the exercise of government authority in particular situations. Thus, where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Armendariz v. Penman*, 75 F.3d 1311, 1319 (9th Cir. 1996), *overruled in part on other grounds by Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 852-53 (9th Cir. 2007) (internal quotations omitted). "The scope of substantive due process does not extend to areas addressed by other, more specific provisions of the Constitution," *id.*, and accordingly, the court

15 - OPINION AND ORDER

may limit its inquiry to the constitutional amendment that specifically addresses plaintiff's claims in lieu of analyzing general notions of substantive due process, *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989).

In this case, plaintiff's substantive due process claim refers to two injuries allegedly sustained by plaintiff: a restriction on her First Amendment freedoms and a restriction on her "freedom of movement and travel." First Am. Compl. [29] ¶ 47. With respect to the restriction on her First Amendment rights, it is clear that the First Amendment provides an explicit source of protection for the type of conduct that plaintiff alleges. Therefore, that portion of her claim is preempted by the First Amendment and will not be analyzed as a substantive due process claim.

In referencing a restriction on her "freedom of movement and travel," plaintiff could be attempting to allege a violation of substantive due process in two ways. First, plaintiff may be alleging that her arrest was a violation of substantive due process. If so, it is clear that that claim is properly pursued under the more specific confines of the Fourth Amendment. Second, plaintiff may be alleging that her exclusion from the park for more than one year violated substantive due process. It could be argued that courts have found that the freedom to travel and the freedom of movement are constitutionally protected liberty interests. *Kent v. Dulles*, 357 U.S. 116, 127 (1958); *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982). Therefore, plaintiff's allegation that defendants' actions violated her substantive due process rights to freedom of movement and travel is not preempted by a more specific constitutional provision, and it warrants independent evaluation.

Still, similar to the court's analysis of plaintiff's procedural due process claim above, the substantive due process claim is inappropriately aimed at the arresting officers. As stated above,

"liability under § 1983 arises only upon a showing of personal participation by the defendant."

*Humphries*, 554 F.3d at 1202.  Plaintiff's substantive due process claim focuses on the allegation

that the decision to exclude someone from the park is not based on any ordinance, law,

regulation, or policy, but rather is left to the discretion of individual officers.  First Am. Compl.

[29] ¶ 47.  It is illogical to conclude that plaintiff is alleging that it was the arresting officers who

left the decision to exclude plaintiff to the discretion of those same arresting officers.  Instead, it

is more logical to read plaintiff's First Amended Complaint to allege that the entity with the

authority to enact an exclusion ordinance violated plaintiff's rights by leaving such discretion

with the arresting officers.  The City of Happy Valley is the owner of the park and the entity that

enacted Happy Valley Municipal Code § 9.04.010, by which plaintiff was excluded from the

park.  Drake Decl. Ex. 101.  The arresting officers had no involvement in the drafting of Happy

Valley's exclusion policy, or the alleged lack thereof.  Therefore, the individual officers cannot be

liable for any claim that § 9.04.010, or any other regulation or ordinance under which the officers

claim to have excluded plaintiff, is vague, allows too much officer discretion, or is too broad in

scope.  Accordingly, the facts alleged do not show that the officers violated plaintiff's substantive

due process rights, and summary judgment is granted in defendants' favor as to Count IV.

### 4.    First Amendment Claim

In her First Amended Complaint, plaintiff alleges that "[t]he actions of Defendants

violated Plaintiff's rights to freedom of speech and expression guaranteed by the First

Amendment to the United States Constitution."  First Am. Compl. [29] at 33.  Plaintiff does not

challenge the constitutionality of any particular state regulation or city ordinance that served as

the basis for her exclusion from the park and arrest.  Instead, she simply argues that defendants'

"actions" violated her right to free speech. Accordingly, this court must analyze the officers'

exclusion and arrest under the two prongs of the qualified immunity test.

Under the first prong of the qualified immunity test, plaintiff has adequately alleged that

her exclusion and arrest violated her First Amendment rights. *See Dietrich v. John Ascuaga's*

*Nugget*, 548 F.3d 892 (9th Cir. 2008) (finding that police officers' removal of a volunteer

gathering signatures on a public sidewalk was a violation of the First Amendment).

Under the second prong of the qualified immunity test, the Supreme Court has held that

"it was not clearly established that an arrest supported by probable cause could give rise to a First

Amendment violation." *Reichle v. Howards*, 132 S.Ct. 2088, 2097 (2012). The Ninth Circuit

has recently followed such precedent in holding that officers are entitled to qualified immunity

from a First Amendment claim when the plaintiff's arrest was supported by probable cause.

*Acosta v. City of Costa Mesa*, 718 F.3d 800, 825 (9th Cir. 2013). Therefore, the individual

defendants may not be entitled to qualified immunity if a genuine issue of material facts remains

as to whether the officers had probable cause to arrest plaintiff.

Accordingly, the dispositive question becomes "whether it is reasonably arguable that

there was probable cause for arrest," or in other words, "whether reasonable officers could

disagree as to the legality of the arrest such that the arresting officer is entitled to qualified

immunity." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011). "Probable

cause to arrest exists when officers have knowledge or reasonably trustworthy information

sufficient to lead a person of reasonable caution to believe that an offense has been or is being

committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.

2007) (citation omitted). While conclusive evidence of guilt is of course not necessary under this

standard to establish probable cause, mere suspicion, common rumor, or even strong reason to suspect are not enough. *Id.* (quotations and citation omitted).

Defendants argue that the officers had probable cause to arrest plaintiff because she refused to leave the park after being rightfully excluded. The question thus becomes whether defendants acted reasonably when they excluded plaintiff from the park. Defendants contend that the officers' probable cause to exclude plaintiff was based on (a) radio calls that Christensen and Hattan received from Amend and De La Rosa concerning plaintiff's conduct and (b) plaintiff's conduct that Christensen and Hattan observed directly.

The court finds that there is a question of fact as to whether Christensen and Hattan ever heard the radio calls from Amend and De La Rosa. Christensen testified that it was only Councilman Drake's complaint that he heard over the radio. Christensen Dep. 18:18-25; 25:11-12; 27:16-18. Even after the event, Christensen testified that he was not aware that anyone, other than Councilman Drake, Deputy Hattan, and Reserve Deputy Burke, was harassed by plaintiff. Christensen Dep. 28:20-23. Similarly, Deputy Hattan testified that he heard no complaint other than that from Councilman Drake, Hattan Dep. 33:22-34:12, and Councilman Drake, himself, testified that his report to the command post was made for the purpose of notifying the police that plaintiff wanted to speak with them, not for the purpose of making a complaint. Drake Dep. 21:18-22:6. Even if this court were to assume that Christensen and Hattan heard the radio calls from Amend and De La Rosa, or were to assume that the radio calls could be considered part of the collective knowledge of the police at the time, there still exists a question of fact as to whether the officers had probable cause to exclude plaintiff.

*/ / /*

a.    Radio Calls

The record suggests that the officers may have received radio calls from Mike De La Rosa, owner of Metro Enforcement Special Services, and Michelle Amend, a Code Enforcement Officer for the City of Happy Valley. De La Rosa placed a radio call to describe two interactions that he witnessed between plaintiff and patrons of the festival. De La Rosa Dep. 62:16-63:11. In the first interaction, plaintiff was standing in the middle of a sidewalk, such that she forced a family with two small children to step off the sidewalk in order to move past her. De La Rosa Dep. 56:2-12. In the second interaction, plaintiff was again blocking the sidewalk and grabbed the arm of a father as he walked past with his wife and toddler. De La Rosa Dep. 56:12-20. To De La Rosa, the man appeared offended and merely continued walking. De La Rosa Dep. 56:18-21. Then, plaintiff's focus just shifted to the next person that walked past her. De La Rosa Dep. 56:21-23.

Defendants argue that De La Rosa's description of this conduct on the radio call served as a basis for probable cause for the officers to believe that plaintiff violated several city ordinances and state laws. Specifically, defendants argue that plaintiff's conduct violated a city ordinance that prohibits unnecessary noise. De La Rosa's report certainly does not support probable cause that plaintiff violated a noise ordinance, as he testified that he could not hear plaintiff's discussions with the patrons from his location fifteen to thirty feet away. De La Rosa Dep. 63:12-15; 65:16-20.

Defendants also cite ORS 166.025 which makes it a misdemeanor to intentionally or recklessly cause public inconvenience, annoyance or alarm: by engaging in fighting or violent, tumultuous or threatening behavior; making unreasonable noise; or by disturbing any lawful

20 - OPINION AND ORDER

assembly of persons without lawful authority.  However, plaintiff's position in the middle of the

sidewalk and grabbing one man's arm does not rise to the level of disruptive behavior

contemplated by ORS 166.025.  *City of Eugene v. Lee*, 34 P.3d 690 (Or. App. 2001) (holding that

a street preacher who accused passersby of various sins, called passersby "whores" and

"whoremongers," attracted a crowd of approximately thirty people, and elicited complaints to

nearby police officers was not guilty of violating a city code nearly identical to ORS 166.025).

Additionally, defendants cite ORS 166.065(1)(a)(A), which makes it a misdemeanor to

intentionally harass or annoy another person by subjecting them to offensive physical contact.

However, the Oregon Court of Appeals defined the lower limit of Oregon's harassment statute to

include "striking, slapping, shoving, kicking, grabbing, and similar acts that are an interference

with the 'contactee,' regardless of whether they produce any pain or discomfort."  *Singh v.*

*Ashcroft*, 386 F.3d 1228, 1232 (9th Cir. 2004) (citing *State v. Sallinger*, 504 P.2d 1383, 1386

(1972)).  A single instance of grabbing a man's arm as he walks by is not an act similar to those

listed by the Oregon Court of Appeals; nor does this court find it objectively offensive.

Finally, defendants cite Happy Valley Municipal Code § 9.04.010, which is a Happy

Valley ordinance that provides criteria by which an individual may be excluded from a City park.

Those criteria include:

> (1) makes unreasonable noise; (2) engages in fighting or in violent, tumultuous, or
> threatening behavior; (3) substantially interferes with any right, comfort or
> convenience of any (name of premises) resident or employee; (4) engages in any
> activity which constitutes a criminal offense; (5) damages, defaces or destroys any
> property belonging to (name of premises) or (name of premises) resident or
> employee; (6) litters on (name of premises); or (7) drives in a careless or reckless
> manner; (8) consumes or possesses an open container of any alcoholic beverage in
> the common areas; (9) violates the States Curfew Statute 419c.680; (10) camps,
> urinates or otherwise remains on (name of premises) without a discernable

legitimate purpose.

Drake Decl. Ex. 101. However, defendants have not attempted to identify which, if any, criterion plaintiff actually violated. Rather, it appears that plaintiff's conduct matches none of the criteria that warrants exclusion. The only criterion that is somewhat applicable prohibits unreasonable noise; however, as discussed above, De La Rosa did not hear plaintiff making unreasonable noise.

Therefore, De La Rosa's report of plaintiff's conduct over the radio cannot provide a reasonable argument that Christensen and Hattan had probable cause to believe that plaintiff violated a city ordinance or state law. Accordingly, based on the facts presented to the court, De La Rosa's report did not provide the officers with probable cause to exclude plaintiff from the park.

The radio call from Michelle Amend similarly fails to demonstrate that the officers acted reasonably in excluding plaintiff from the park. Amend testified that she used the radio to inform the officers about complaints that she had received from patrons concerning plaintiff's conduct. Amend Dep. 25:2-10. Specifically, Amend received three complaints, which she was able to describe with only vague detail during her deposition. The first two complaints were from families that described plaintiff as very aggressive and using profanity. Amend Dep. 21:7-16; 24:8-10. The third complaint was from Councilman Drake, who described plaintiff's conduct similarly. Amend Dep. 24: 21-24. Amend did not witness plaintiff acting aggressively and she did not witness plaintiff using profanities toward any patrons of the park. Amend Dep. 25:23-26:16. Such a description in no way indicates that plaintiff was in violation of a city noise

ordinance, nor does it indicate that plaintiff violated ORS 166.065(1)(a)(A), which requires an

offensive touching, as explained above. Similarly, the conduct described by Amend does not rise

to the level of disruptive conduct that constitutes a violation of ORS 166.025. *See City of*

*Eugene*, 34 P.3d 690. Accordingly, Amend's description of plaintiff's conduct does not provide

the officers with probable cause to believe plaintiff was in violation of any state law or city

ordinance. Therefore, based on the facts presented to the court, Amend's radio call does not

identify a reasonable argument that the officers had probable cause to exclude plaintiff from the

park.

        b.     Plaintiff's Conduct

       Defendants argue that Christensen and Hattan also had probable cause to exclude plaintiff

from the park based on plaintiff's behavior that they observed directly. Specifically, defendants

argue that plaintiff acted in an unreasonably loud and aggressive manner upon initial contact with

law enforcement. However, the facts taken in a light most favorable to plaintiff raise a question

of material fact as to whether plaintiff acted aggressively upon contact with the police. Reserve

Deputy Burke attests that plaintiff charged at her while yelling and swinging her arms, but

plaintiff tells a different story. Plaintiff attests that it was Burke who first approached her.

Grooman Dep. 88:18. Plaintiff claims that she said something benign to Burke and simply

turned away. Grooman Dep. 90:5-25. At that point, plaintiff asserts that Burke called for backup

and threatened to tase plaintiff. Grooman Dep. 90:20-25. When the backup officers arrived,

plaintiff's first conversation with any officer occurred when one officer tapped plaintiff on the

shoulder and advised her that she was being detained. Grooman Dep. 99:8-13. Plaintiff

proclaimed to the officer that she had the right to be in the park, and the officer responded, "You

23 - OPINION AND ORDER

have the right to shush up." Grooman Dep. 100:10-14. After that comment, plaintiff claims that she silenced herself. Grooman Dep. 100:21-23.

These facts, taken in the light most favorable to plaintiff, do not suggest that Christensen and Hattan had probable cause to arrest plaintiff based on the conduct they observed. While defendants' recitation of the facts differ significantly from that of plaintiff, the court cannot resolve that factual dispute on summary judgment. Therefore, a genuine issue of material fact remains as to whether Christensen and Hattan observed conduct that provided probable cause to exclude plaintiff from the park.

In sum, defendants have failed to demonstrate that no issue of material fact remains as to whether the totality of the circumstances demonstrates that the arresting officers had probable cause to exclude plaintiff from the park. Consequently, an issue of fact also remains as to whether Christensen and Hattan are entitled to qualified immunity on plaintiff's First Amendment claim.

Moreover, plaintiff's First Amendment claim could be construed to allege that, not only was the initial exclusion and arrest a constitutional violation, but the length of the exclusion was also a violation of the First Amendment. A content-neutral governmental action that punishes conduct that is interwoven with speech activity must burden speech no more than necessary. *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000). Plaintiff's exclusion for a year and a day is not narrowly tailored, and under the second prong of the qualified immunity test, plaintiff's right to be free from such restriction is clearly established. *See Yeakle v. City of Portland*, 322 F.Supp. 2d 1119 (D. Or. 2004) (holding that an exclusion from parks that lasted thirty days was longer than necessary).

24 - OPINION AND ORDER

Defendants argue that the officers are entitled to qualified immunity for such a constitutional violation because, in drafting the exclusion, the officers were merely enforcing a duly-enacted municipal ordinance - Happy Valley Municipal Code § 9.04.010. However, the officers excluded plaintiff for a period even longer than that allowed by § 9.04.010; therefore, the officers did not act pursuant to the ordinance. "[A]n officer who unlawfully enforces an ordinance in a particularly egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds of the ordinance, will not be entitled to immunity even if there is no clear case law declaring the ordinance or the officer's particular conduct unconstitutional." *Grossman v. City of Portland*, 33 F.3d 1200, 1209–10 (9th Cir. 1994) (citing *Chew v. Gates*, 27 F.3d 1432, 1449–50 (9th Cir. 1994), *cert. denied*, 513 U.S. 1148 (1995)). Because the officers clearly excluded plaintiff from the park for a period longer than that allowed by the ordinance, it is apparent that qualified immunity is inappropriate.

Defendants also argue that any constitutional violation that arose from the exclusion form, itself, can be attributed only to Reserve Deputy Duffy, who actually filled out the blanks on the form. However, it is undisputed that Duffey completed the form at the direction of Christensen and Hattan. Joint Statement of Stipulated Facts [55] ¶ 5. There remains a question of fact as to whether Christensen and Hattan also directed Duffey with respect to the length of the period of exclusion. Defendants claim that any exclusion longer than a year was made negligently, and negligence is not actionable in a § 1983 claim. However, defendants set forth no facts to support their contention that the exclusionary period was established negligently and not intentionally. Therefore Christensen and Hattan are not awarded summary judgment as to their qualified immunity defense to plaintiff's First Amendment claim.

### C.    Legal Merit of Plaintiff's First Amendment Claim

Plaintiff's First Amendment claim against Christensen and Hattan is the only claim that survives this court's analysis under the doctrines of qualified immunity and *Monell*. The officers argue that, even if they are not entitled to qualified immunity on plaintiff's First Amendment claim, they are still entitled to summary judgment because the claim fails as a matter of law. Specifically, defendants contend that plaintiff's First Amendment claim must fail because she has not provided evidence "showing that by his actions [the defendants] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendants'] conduct." Def.'s Reply [51] at 14 (citing *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (quotation omitted).

However, courts have recognized that "[d]irect evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available." *Mendocino Envtl. Ctr.*, 192 F.3d at 1302. Therefore, it is almost always necessary to infer motives from circumstantial evidence. *Id.* "Moreover, '[q]uestions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment." *Id.* (quoting *Braxton–Secret v. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985)).

In this case, plaintiff has satisfied her burden in providing evidence that demonstrates that the deterrence of political speech may have been a motivating factor in the officers' conduct. Plaintiff testified that her interaction with the police began solely because Reserve Deputy Burke threatened to arrest Roseanne Cupp, the woman with whom plaintiff was petitioning, if she continued to gather signatures. Grooman Dep. 39:16-19. This alone suggests a motivation to impede political speech. Following that interaction, plaintiff drew the attention of the police

because she had a conversation with Councilman Drake about her right to collect signatures in the park and Drake notified the police that plaintiff wanted to speak with them. Plaintiff testified that it was then Reserve Deputy Burke who approached her later in the day, because she had seen plaintiff gathering signatures and giving a festival patron a high-five. Grooman Dep. 95:1-6. This testimony is sufficient to create an issue of fact as to whether Reserve Deputy Burke approached plaintiff because she was gathering signatures.

Christensen and Hattan argue that plaintiff was excluded for her disruptive conduct after plaintiff was approached by Burke, not for her political speech. They claim that she was yelling about her right to be in the park, using profanity, and causing a disturbance. As an initial matter, plaintiff refutes those claims and testified that she fell silent during her interaction with the officers. Grooman Dep. 100:9-23. Moreover, even if plaintiff loudly protested the officers' authority to impede her petition and used profanity in doing so, the officers cannot "use the awesome power which they possess to punish individuals for conduct that is not only lawful, but which is protected by the First Amendment." *Johnson v. Bay Area Transit Dist.*, 724 F.3d 1159, 1174 (9th Cir. 2013) (quotations and citations omitted) (holding that protesting police action, yelling at the police, and exchanging profanities with police is not grounds for probable cause to arrest). "[C]riticism of the police is not a crime." *Duran v. City of Douglas*, 904 F.2d 1372, 1377 (9th Cir. 1990) (citation omitted). Therefore, the officers' claim that plaintiff was excluded for yelling, using profanity, and insisting on her rights to petition in the park further supports plaintiff's argument that the officers' exclusion was motivated by desire to chill plaintiff's speech. This court finds that defendants' argument as to plaintiff's First Amendment claim lacks merit. Accordingly, plaintiff's First Amendment claim against defendants Christensen and Hattan

27 - OPINION AND ORDER

survives summary judgment.

The court's analysis of *Monell* and qualified immunity is dispositive of all of plaintiff's claims other than her First Amendment claim. Accordingly, the court need not address the remainder of defendants' arguments.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment [37] is GRANTED IN PART and DENIED IN PART. Defendant Clackamas County is awarded summary judgment as to all claims. Defendants Christensen and Hattan are awarded summary judgment as to Counts II, III, IV, and V of plaintiff's First Amended Complaint. Count I against defendants Christensen and Hattan survives summary judgment.

IT IS SO ORDERED.

DATED this 13 day of November, 2014.

Ancer L. Haggerty
United States District Judge